IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

International Outsourcing )
Services, LLC, )
 )
 )
         Plaintiff, )
 )  No.  05 C 1537
   v. )
 )
Blistex, Inc. )
 )
         Defendant. )

## MEMORANDUM OPINION AND ORDER

International Outsourcing Services, LLC ("IOS") is a "coupon processor" in the retail coupon industry. IOS is retained by retailers to sort, count, and submit coupons to manufacturers for redemption. IOS either advances to the retailer the value of the expected coupon redemption, in which case IOS characterizes itself as a "clearinghouse" in a "funded" transaction, or directs the redeemer to pay the retailer directly, in which case IOS characterizes itself as a "processor" in an "unfunded" transaction. IOS uses the term "coupon processor" as an umbrella term covering both its roles as a "clearinghouse" and as a "processor".

In order to redeem coupons, either IOS submits the coupons directly to the issuing manufacturer or alternatively, if the manufacturer has so designated, IOS submits the coupons to a redemption agent who redeems the coupons on behalf of the manufacturer. IOS's complaint states that 93% of the redemption

agent market is controlled by two companies. One of these two companies, NCH Marketing Services, Inc. ("NCH"), serves as the redemption agent for Blistex, Inc. ("Blistex") and Blistex's competitors named in its complaint.

IOS's complaint states that traditionally coupon processors (or retailers who choose not to employ the services of coupon processors) were reimbursed a "minimum shipping cost" by manufacturers / redemption agents.[1] According to the complaint, Blistex and several of its competitors have now begun to reimburse shipping costs at a rate of $5.00 per thousand instead of the traditional minimum shipping charge. The origin of the new pricing system is the subject of IOS's complaint and alleged antitrust violation. IOS alleges that NCH, Blistex, and Blistex's competitors have all conspired to set the maximum rate they will reimburse for shipping at $5.00 per thousand coupons in violation of the Sherman Act. According to IOS, it will now lose money on shipping in all of its redemption transactions because "shipping rates will always exceed a rate of $5.00 per thousand coupons redeemed." IOS has only brought suit against Blistex and seeks to enjoin Blistex from engaging in all activity related to the fixing of shipping costs.

---

[1] Although the complaint does not explain how this minimum shipping charge was calculated, it implies that the minimum shipping charge was sufficient to cover actual costs of shipping by retailers and coupon processors.

IOS's claim for injunctive relief is brought under the Clayton Act 15 U.S.C. § 26 for actions in violation of the Sherman Act 15 U.S.C. § 1. Section 1 prohibits "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." "To state a claim for relief under § 1, a party must allege either that the contract, combination, or conspiracy resulted in a *per se* violation of the Sherman Act or that it unreasonably restrained competition in a relevant market." *MCM*, 62 F.3d at 976. In addition, the plaintiff must allege an accompanying injury. *Id.* at 972 n.7.

### I. Blistex's 12(b)(6) Motion

Blistex moves to dismiss this action for failure to state a claim under FED. R. CIV. P. 12(b)(6). I deny Blistex's motion to dismiss for the following reasons.

On a motion to dismiss, I accept all well-pleaded facts in the complaint as true. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). I must view the allegations in the light most favorable to the plaintiff. *Gomez v. Illinois State Bd. of Education*, 811 F.2d 1030, 1039 (7th Cir. 1987). Dismissal is proper only if the plaintiff can prove no set of facts to support his claim. *First Ins. Funding Corp. v. Federal Ins. Co.*, 284 F.3d 799, 804 (7th Cir. 2002). My review is limited to the pleadings on file and I have excluded the factual assertions

contained in Blistex's motion to dismiss and the exhibits attached to its motion from my analysis of the claim. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1430 (7th Cir. 1996).

There is no heightened pleading standard for antitrust claims. *Hammes v. AAMCO Transmissions*, 33 F.3d 774, 782 (7th Cir. 1994). As the Seventh Circuit stated in *MCM Partners v. Andrews-Bartlett & Assocs.*, "attempts to apply a heightened pleading standard in antitrust cases had been 'scotched' by the Supreme Court's decision in *Leatherman* . . . . an antitrust plaintiff need not include 'the particulars of his claim' to survive a motion to dismiss." 62 F.3d 967, 976 (7th Cir. 1995) (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993)).

Below I excerpt the relevant paragraphs that set forth IOS's antitrust claim from its lengthy complaint:

> Paragraph 25: Blistex and Blistex Competitors, all clients of NCH and all reaching their reimbursement decision only after communications with NCH, are therefore aware of the fact that their reimbursement rate decision is not an isolated transaction but part of a larger arrangement involving other manufacturers. Blistex and Blistex Competitors, by reason of their communications with NCH and the nature of the recommendation and invitation by NCH to honor the "industry rate," are aware that concerted action is both contemplated and invited and that their decision to pay "industry rate" will have the necessary consequence that each will be paying the same as the others. When Blistex and Blistex Competitors decided to pay the recommended rate each thereby knowingly entered into concerted action with the known effect of fixing and stabilizing the amount each would pay as reimbursement for shipping

4

charges. This conduct is concerted price fixing by competitors, a *per se* violation of the Sherman Act, 15 U.S.C. § 1.

Paragraph 26: Under the circumstances, it is apparent that NCH, while ostensibly only an agent for redemption of coupons for manufacturers, is in fact a messenger facilitating exchange of information resulting in fixing and stabilizing the amount manufacturers, including Blistex and Blistex Competitors pay for reimbursing shipping charges. . . .

Paragraph 27: In recent communications Blistex has advised IOS that it will no longer pay IOS's shipping charge but will pay only $5.00 per thousand coupons redeemed, the amount Blistex admits was outlined to Blistex by NCH and known by Blistex to be the amount allowed by other manufacturers represented by NCH. In combination with each other and utilizing NCH as the messenger and facilitator of their unlawful combination, Blistex and Blistex Competitors have unlawfully set the amount each will reimburse for shipping charges at $5.00 per thousand coupons redeemed, in violation of Sherman Act, 15 U.S.C. § 1.

Paragraph 28: On information and belief, IOS alleges that Blistex, acting alone and/or in concert and combination with NCH and others unknown to IOS, has approached and will continue to do so in the future, other manufacturers and retailers attacking IOS, its charges, and practices attempting to persuade them to agree not to pay (in the case of manufacturers) or charge (in the case of retailers) more than $5.00 per thousand coupons redeemed as a shipping charge.

### A. Conspiracy

IOS's pleadings must allege conduct that constitute a conspiracy. *MCM, 62 F.3d at* 976. In order to meet this element of a 15 U.S.C. § 1 claim, IOS does not need to allege that competitors directly communicated with one another. Rather, in

5

*Interstate Circuit, Inc. v. United States*, the Supreme Court stated:

> [i]t is elementary that an unlawful conspiracy may be and often is formed without simultaneous action or agreement on the part of the conspirators. . . . Acceptance by competitors, without previous agreement, of an invitation to participate in a plan, the necessary consequence of which, if carried out, is restraint of interstate commerce, is sufficient to establish an unlawful conspiracy under the Sherman Act.

306 U.S. 208, 227 (1939); *See also United States v. Masonite*, 316 U.S. 265, 275 (U.S. 1942); *Bellevue Drug Co. v. Advance PCS*, 2004 WL 724490, at *5 (E.D. Pa. Mar. 2, 2004). IOS's complaint is somewhat confusing (and perhaps inconsistent) in that it implies different levels of conspiratorial conduct in different paragraphs. For example, in paragraph 25, IOS implies that NCH was the instigator in the conspiracy and that Blistex only knowingly acquiesced to the price fixing scheme. On the other hand, Paragraph 28 implies that Blistex was more of a co-instigator with NCH and actively attempted to convince manufacturers to join in the price fixing scheme. These inconsistencies, however, are not fatal because either level of the alleged participation by Blistex is sufficient to support a conspiracy. *See Interstate Circuit*, 306 U.S. at 227. IOS has alleged that Blistex and its competitors collectively decided to lower the amount paid for coupon shipping to $5.00 per thousand. According to IOS, each company was aware that its competitors would adopt the same pricing and each company's decision was dependent on action to be taken by the

others. This is sufficient to allege a conspiracy and that Blistex was a conspirator.

Additionally, the fact that IOS has not pled "any concrete facts (who? what? where? how?) concerning the alleged 'contract, combination, or conspiracy . . .'" does not require dismissal. IOS does not have to support its allegations with this type of factual particularity in its complaint. *Hammes*, 33 F.3d at 782.

### B. Conduct in Violation of 15 U.S.C. § 1

In order to make out an antitrust claim under 15 U.S.C. § 1, IOS must also allege conduct that constitutes either a *per se* violation or an unreasonable restraint of trade in a relevant market. *MCM*, 62 F.3d at 976. IOS alleges price fixing. In discussing the illegality of a price fixing conspiracy, the Supreme Court has held that "[a]ny combination which tampers with price structures is engaged in an unlawful activity. Even though the members of the price-fixing group were in no position to control the market, to the extent that they raised, lowered, or stabilized prices they would be directly interfering with the free play of market forces." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 221 (1940).

The more common type of price fixing occurs among horizontal competitors who conspire to fix the price of items they sell. Attempts by sellers to fix either minimum or maximum prices are unquestionably violations of the Sherman Act. *Arizona v. Maricopa*

*County Medical Soc.*, 457 U.S. 332, 348 (1982). The broad prohibition against price fixing also extends to the less common situation of price fixing among horizontal competitors who are buyers. This situation is often referred to as a "buyers' cartel" and occurs when a group of buyers band together in order to fix a maximum price (below competitive levels) that they will pay for an item. Buyers' cartels engaged in price fixing have been held to be illegal under the Sherman Act even though their goal is to lower the price of the input. *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.*, 334 U.S. 219, 223-24, (1948); *Vogel v. American Soc. Of Appraisers*, 744 F.2d 598 (7th Cir. 1984). See also PHILIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW ¶¶ 2010-2019 (2d ed. 2000). As the Seventh Circuit held in *Vogel*, "[b]uyer cartels, the object of which is to force the prices that suppliers charge the members of the cartel below the competitive level, are illegal per se." *Vogel*, 744 F.2d at 601. The court explained that: "just as a sellers' cartel enables the charging of monopoly prices, a buyers' cartel enables the charging of monopsony prices; and monopoly and monopsony are symmetrical distortions of competition from an economic standpoint." *Id.*

In the present case, IOS has alleged that Blistex and its competitors, together with their redemption agent NCH, have conspired to fix the shipping costs paid to retailers and coupon processors at $5.00 per thousand coupons redeemed. The shipping

cost associated with redeeming coupons is one of many inputs that make up these manufacturers' products. Thus, the complaint sets forth a horizontal price fixing scheme among buyers to fix the prices of an input - shipping costs for coupons - below its competitive cost. IOS's claim sufficiently alleges conduct prohibited *per se* by the Sherman Act.

### C. Injury

The third element IOS must plead is an accompanying injury. *MCM*, 62 F.3d at 972 n.7. Injunctive relief may be brought under 15 U.S.C. § 26 "against threatened loss or damage by a violation of the antitrust laws." Additionally, "in order to seek injunctive relief . . . a private plaintiff must allege threatened loss or damage 'of the type the antitrust laws were designed to prevent and flows from that which makes defendants' acts unlawful.'" *Cargill Inc. v. Monfort*, 479 U.S. 104, 113 (1986) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). In an action brought against a buyers' cartel, a seller's injury from lowered prices constitutes an antitrust injury. *See e.g. Bellevue Drug Co.*, 2004 WL 724490 at *4 (citing *Mandeville Island Farms*, 334 U.S. at 235). IOS has alleged that as a seller, it has suffered and will continue to suffer a monetary loss directly related to Blistex and its competitors illegally fixing the price they will pay for shipping on coupons. IOS continues to be threatened by Blistex's actions.

The only attack Blistex makes on IOS's allegation of injury is that IOS cannot maintain this action because it did not suffer a "direct injury". In making this argument, Blistex relies on *Illinois Brick v. Illinois*, 431 U.S. 720 (1977). In *Illinois Brick*, a group of purchasers attempted to recover damages from a seller engaged in price fixing. The purchasers had not purchased directly from the violator, but from an intermediary who had itself purchased from the violator. The purchasers claimed that the damages from the antitrust violation had been passed on to them through their purchase from the intermediary. The Supreme Court rejected the "pass on" theory of damages and held that, with limited exceptions, an indirect purchaser could not bring a claim for damages in a price fixing scheme. Blistex argues that *Illinois Brick* is applicable here and that because IOS was not a direct purchaser of Blistex products, it cannot bring this claim.

Blistex's argument ignores the fact that IOS is alleging a complaint of buyer side price fixing in which Blistex is the purchaser. Thus, the relevant inquiry would not be whether IOS was a purchaser of Blistex products, but rather whether IOS is a direct seller to Blistex and whether the damages from the alleged price fixing could be characterized as being "passed on" to IOS from the retailers. *See e.g. Shapiro v. General Motors Corp.*, 472 F. Supp. 636, 649 (D. MD. 1979). I do not need to make this inquiry, however, because Blistex's argument fails for the more

fundamental reason that the holding in *Illinois Brick* has been limited to claims seeking damages and does not apply where only injunctive relief is sought. It has been noted: "[a]n equity suit neither threatens duplicative recoveries nor requires complex tracing through the distribution chain. There are no damages to be traced, and a defendant can comply with several identical injunctions as readily as with one. *Illinois Brick* has not therefore barred an indirect purchaser's [here seller's] suit for an injunction." AREEDA & HOVENKAMP, ANTITRUST LAW, ¶ 346d. *See also Campos v. Ticketmaster*, 140 F.3d 1166, 1172 (8th Cir. 1998); *Mid-West Paper Products Co. v. Continental Group*, 596 F.2d 573, 589-94 (3d Cir. 1979); *In re Beef Industry Antitrust Litigation*, 600 F.2d 1148, 1167 (5th Cir. 1979)("[T]he Illinois Brick rule has no application to claims for injunctive relief."). IOS's complaint seeks injunctive relief exclusively and therefore IOS has sufficiently alleged injury.

## II. NCH's joinder under FED. R. CIV. P. 19(a)

Blistex also argues that NCH must be joined as a party in this action. On a FED. R. CIV. P. 12(b)(7) motion for failure to join a party under FED. R. CIV. P. 19, the court first determines if NCH is a "person[] to be joined if feasible" under FED. R. CIV. P. 19(a)(1)-(2). If NCH qualifies under either of these rules, then the court will order its joinder. Only if joinder of NCH would not

be feasible does the court determine if the case should be dismissed under FED. R. CIV. P. 19(b).

Under Fed. R. Civ. P. 19(a)(2), a non-party must be joined if feasible if the absent person "claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect that interest . . . ." The complaint in this case repeatedly alleges misconduct by NCH and the injunctive relief requested would enjoin NCH from much of what is alleged in its relationships with other NCH customers. Joinder of NCH is feasible in this case. Therefore, the court orders NCH's joinder.

**ENTER ORDER:**

*Elaine L Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: February 14, 2006